## AL McCULLOUGH TRANSFER CO v PIZZULO

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 17, 1936

Vern S. Thomas, Youngstown, for plaintiff in error.

Hahn, Williams & Shermer, Youngstown, for defendant in error.

## OPINION

By NICHOLS, J.

This cause comes into this court on error from the judgment rendered in favor of Anthony Pizzulo against Al McCullough Transfer Company in the Common Pleas Court of Mahoning County, Ohio, wherein the case was tried to the court and jury, a verdict being returned by the jury in the sum of $10,000. The parties here occupy positions the reverse of those occupied in the Common Pleas Court and will be referred to herein as they appeared in the court below.

The record shows that on the evening of December 20, 1933, at about 5:30 P. M., plaintiff, accompanied by another person by the name of Tony Toto, was operating a 1926 Overland coach automobile in an easterly direction on the road between the cities of Struthers, Ohio, and Lowellville, Ohio, and that plaintiff's automobile came into collision with an Autocar truck, operated by a driver for the defendant and at the time engaged in hauling limestone from Carbon, Pennsylvania, to the Youngstown Sheet and Tube Company, Youngstown, Ohio. The truck of defendant was proceeding in a westerly direction on the highway at the time of the collision. The road had an eighteen-foot hard surface, and at the place where the collision occurred was a straight stretch of road. Defendant's truck weighed five and one-fourth tons and had a six ton load. It was claimed on behalf of defendant that its truck was equipped with a governor which limited its speed on the level to about 25 miles per hour.

It was the contention of plaintiff, as shown by his own testimony, that as he drove eastwardly along this highway the lights of his automobile were burning; that he was traveling about 20 to 25 miles per hour and was driving on the right hand side of the road; that he noticed a truck coming; that he saw the lights of the oncoming car about two hundred yards away; that when the oncoming truck got to within about fifty feet of plaintiff's car, the truck suddenly turned to its left hand side of the center of the highway and struck plaintiff's automobile, knocking it into a ditch and injuring plaintiff. The plaintiff, however, claims that at the time his car was struck he had pulled over to his extreme right side of the pavement, with the right wheels of his car off the paved portion thereof and very close to the ditch.

The driver of defendant's truck maintained that he kept on his right side of the center line of the highway; that he was not going more than 15 miles an hour, and that plaintiff's car ran into the rear of defendant's truck, bursting the rear left tire, but causing no other damage to the truck.

From a careful reading of the record it is apparent that the real controversy to be determined by the jury in this case was the position of the respective cars upon the highway in question at the time the collision occurred. The testimony of the witnesses is highly conflicting and more or less confusing. The companion of plaintiff, who was in the car with him at the time, had died previous to the trial and his testimony was not available.

The court correctly charged the jury as to the burden of proof being upon the plaintiff in the case, and it may be pointed out that the record discloses that the collision was seen by an apparently entirely disinterested witness in the person of Mr. Paul N. Moody, about 23 years of age, resident of the city of Youngstown, in the employ of the Miller Candy Company for a period of three years, who testified that on the date of the accident he was driving his truck for the Miller Candy Company and had been in Struthers, Lowellville and Carbon; that he was familiar with this highway, and made trips thereover at least once every week; that the accident happened about a quarter to twenty minutes after five o'clock; that it wasn't dark, but

was about dusk; that he was following the McCullough truck for a distance of about one and one-half miles prior to the accident; that he tried to pass the truck, but couldn't do it because of the bends in the road, and because of the fact that the truck was going a little faster than he could afford to go in taking a chance of going around it; that he noticed the truck go toward the middle of the road; that he thought the driver of the truck just let the wheel go for a minute; that he just went right on and hit plaintiff's car on the side and then went back over to the right side again. The witness testified positively that he saw the truck "pull over to the other side of the road, past the middle"; that he noticed the plaintiff was coming slow, and that plaintiff slowed up and tried to squeeze in toward the edge of the road, that "he got over as far as he could, but there was no room for him to go" and "the truck hit him and turned him around and then the truck kept on going, pulled up and stopped"; and that the plaintiff's car turned around and then went into the ditch.

So far as we can observe from the record the testimony of Mr. Moody must have carried great weight with the jury in this case in view of the conflicting evidence of the immediate parties to the collision. There is another scrap of testimony in the record which may have had considerable weight in the minds of the jury in that the driver of the truck, together with a number of witnesses for the defendant, had persistently stated that the truck received no evidence of the impact other than the damaged rear left tire. After these witnesses had so testified, it developed that the driver had given a history of the accident shortly after the occurrence thereof wherein he had admitted that the front wheel hub cap bore some evidence of the collision.

As shown by the record, the driver of the truck of defendant was asked if he had not formerly given his deposition in the case, wherein he had been asked the question: "What part of your truck did the Overland sedan hit?" to which he had answered "it grazed the left front wheel and hit the hind wheel of the truck." The witness admitted that he had so testified and that it was true that the left front wheel of the truck came into collision with some part of the automobile before the rear tire of the truck was damaged; that "it barely grazed it—scratched it."

It would serve no useful purpose to set

forth in detail in this opinion the confusing character of the evidence shown in the record, or to even furnish a further epitome thereof, but since the jury were properly instructed as to the burden resting upon the plaintiff to prove the allegations of his petition by the greater weight of the evidence, we are unable to say that the verdict was manifestly against the weight of the evidence.

In connection with the cross-examination of the driver of defendant's truck, counsel for plaintiff read to the witness what purported to be questions and answers given at the time of the taking of the deposition of the truck driver. Some reference was made to this deposition in argument of counsel. It is claimed on behalf of plaintiff in error that prejudicial error occurred at the trial by reason of the reading of portions of this deposition, because the same had not been filed in the clerk's office and was not offered in evidence. Of course the deposition was not offered in evidence because the witness was present in court. The fact that the deposition was not filed in the clerk's office did not prevent the plaintiff from cross-examining the truck driver with reference to admissions made by him in the depositions which were contrary to his testimony at the trial. The witness could have been questioned about such contradictory statements even though they had not been reduced to writing in the form of a deposition and consisted merely of oral statements made by the witness. It has become a very general practice for attorneys to take the testimony of known adverse witnesses, using the provisions of law providing for the taking of depositions as a sort of bill of discovery, and, likewise, for the purpose of enabling counsel to take advantage of any conflict in the statements of the witnesses, there being no intention of counsel taking the depositions to make any other use thereof. There is no error in the use made of the deposition of the truck driver in this case.

It is further claimed that the judgment of the lower court is contrary to law in that plaintiff admits that for some little distance before the collision he saw the truck of defendant on the wrong side of the highway; that, therefore, the plaintiff was guilty of contributory negligence under the provisions of §12603, GC, which section directs that no person shall operate any motor vehicle upon a public road or

highway at a greater speed than will permit him to bring his motor vehicle to a stop within the assured clear distance ahead.

It is further claimed that the verdict is contrary to law since the plaintiff admitted that when he saw defendant's truck coming on the wrong side of the road, plaintiff did not blow his horn or signal his perilous situation in any way to the driver of the truck to warn the truck driver of his position in the highway.

It is further claimed that the plaintiff did not exercise ordinary care in the application of the brakes on his automobile.

Some question is also raised as to the sufficiency of the lights which plaintiff had on his automobile at the time and place.

A careful reading of the charge of the court to the jury discloses that no request was made to charge upon the subject of the provisions of §12603, GC, and it seems apparent that counsel for defendant did not at that time consider that section applicable under the evidence. No specific charge having been requested, and only a general exception being taken to the charge given, we can find no prejudicial error with reference to the failure of plaintiff to stop his car within the assured clear distance ahead. The court did correctly charge the jury upon the subject of contributory negligence and gave the jury specific instructions as to the provisions of law governing brakes and lights.

The drivers of each of these motor vehicles admitted seeing the car of the other approaching when they were some distance apart. The court correctly charged the jury that "a warning signal is to be used to apprise another of your whereabouts upon a public thoroughfare or highway so that such other person, after receiving such warning signal, may govern himself in such a manner as to take into consideration your presence there upon the highway at the time and place in question and reasonably avoid injury to you or your property. Now, if you see anything upon the highway, there is no reason for giving a warning signal because the only purpose or function of a warning signal is to apprise you of the presence or whereabouts of another upon the highway."

We are unable to find that the verdict of the jury is contrary to law. We think we scarcely need repeat here that a duty rests upon counsel to request the court to correct his charge where it is claimed that there has been an omission of a single issue

raised by the evidence or the pleadings, and that a general exception to the charge does not bring into the record error of the court in omitting to charge upon such issue.

Before taking up the third specification of error we refer to the fourth claim of the plaintiff in error which is that the court erred in the admission of certain testimony given by Dr. Coe, who was called on behalf of plaintiff and testified as an expert in this case, having made an examination of the plaintiff during the progress of the trial, who, upon direct examination, gave answers to certain hypothetical questions and testified generally as to the condition which he found from his examination of the plaintiff.

Upon cross examination, Dr. Coe was inquired of as follows:

"Q. I presume you talked this case over with the attending physician, Doctor? A. Yes, sir.

"Q. When did you talk to him? A. Yesterday.

"Q. Whereabouts? A. By telephone from his home.

"Q. I presume he discussed the case with you and subjective symptoms of what his examination disclosed? A. Yes, sir.

"Q. And I presume you have taken those matters into consideration in expressing the opinion that you have in this case? A. I have.

"Q. So that the data that Dr. Nagle (the attending physician) submitted to you was necessary for you to arrive at a conclusion regarding the case, was it? A. Yes, sir."

Mr. Thomas (counsel for defendant): "I, at this time, move that the testimony of the doctor be stricken from the record and that the jury be instructed to disregard it."

After discussion between the court and counsel, and before the court passed upon the objection, the witness, Dr. Coe, stated:

"Your Honor, may I state something? Court: Yes.

"Mr. Thomas: I haven't asked any question.

"A. Seeing the significance of the question as I do now, may I change the answer to the question made? Court: Yes.

"A. Namely, answers to any questions made here in court were not altered by any information obtained from Dr. Nagle.

"Court: You are overruled then.

"Mr. Thomas: Exception."

Dr. Coe, upon cross examination, being inquired of further as to his former statement that he had taken into consideration the matters made known to him by Dr. Nagle when forming his opinion and conclusions, admitted that he had answered "yes" to the question "but misunderstood the question," and that his answer was given "due to a misunderstanding."

"Q. You told me a little while ago, did you not, doctor, that it was necessary for you to get such data from Dr. Nagle in order to reach a conclusion and to express an opinion in the case, isn't that true? A. And I say now that it was not so necessary.
"Q. It was not so necessary? A. Exactly."

We do not believe that the admission of this testimony constituted error prejudicial to the defendant below. It is true that a physician other than the attending physician who makes an examinaiton of an injured person solely for the purpose of testifying as a witness in the case of such injured person is not allowed to ▮▮▮▮ testify to his conclusions which are arrived at from anything other than his own objective examination of the injured person, and if the doctor had not qualified his first testimony, wherein he stated that he had taken into consideration the reports made to him by Dr. Nagle, the objection to the testimony must have been sustained. But, when the witness, Dr. Coe, further testified that these reports made by Dr. Nagle were not necessary to the opinions given by him, and the conclusions testified to by him, we think that the objection was properly overruled and that the conflicting answers given by the doctor went only to the weight and credit which the jury would give to his testimony.

For an exposition of the rules governing the admission of expert testimony see the opinion of this court in the case of Equitable Life Assurance Society of the United States v Burton, ante, 241.

It is next claimed by counsel for plaintiff in error that the amount of the verdict rendered by the jury is manifestly excessive. In this we agree after a most careful study of all the evidence in this case. Without attempting here to set forth the testimony showing the extent of plaintiff's injuries, or the nature thereof, we have concluded that the verdict of the jury in the sum of $10,000 is so manifestly against the weight of the evidence that this case must be reversed unless the plaintiff will accept a remittitur of $5,000. Our attention is called to the argument to the jury made by counsel for the plaintiff, and we think a portion of this argument may have been responsible, in whole or in part, for the excessive verdict rendered by the jury. We do not ▮▮▮▮▮ find such argument so manifestly prejudicial as to warrant a reversal of this case, but we are of opinion that the following statement made by counsel for plaintiff in the argument to the jury should be expressly disapproved, to-wit:

"What man or woman within the hearing of my voice would take ten thousand dollars in cash today and trade places with Mr. Pizzulo with a broken back?"

By this statement of counsel for plaintiff to the jury counsel sought to have the jury arrive at the sum of money ▮▮▮▮▮ which each of the jurymen would take or would think he was entitled to have if he had received the injury in question. This was clearly wrong.

There is a contention made by counsel for defendant that in the argument of counsel for plaintiff to the jury an improper use was made of the deposition of the truck driver, Withers, hereinbefore referred to. We find no error whatever in this respect. If the witness, Withers, had written a letter to a friend in which he made statements contrary to his sworn testimony it would have been proper to interrogate him upon the contents of his letter, and if he admitted the contents thereof to be true such parts of the letter as were admitted to be true could be read to the jury. This is a much safer course than to depend upon the memory of counsel as to what the admissions were. All of this deposition that counsel read to the jury was that part which the witness, Withers, expressly admitted to be true.

There is some claim made in the case that the court erred in overruling the motion for a new trial on the ground of newly discovered evidence. It has been long recognized as a rule that newly ▮▮▮▮▮ discovered evidence which is merely cumulative to that already given in a case is not such as necessarily requires the sustaining of a motion for a new trial on that ground, the matter resulting in the sound discretion of the trial court. We find no abuse of discre-

tion in this respect, and find that no error prejudicial to the rights of the defendant has intervened in this case.

Having found no prejudicial error in the record, and that substantial justice has been done, and plaintiff having accepted the remittitur of $5,000 in accordance with the finding of this court in the matter of the excessiveness of the verdict, the judgment of the trial court is affirmed.

Judgment affirmed.

ROBERTS and CARTER, JJ, concur.